UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY DOMINIC REO, | ) | Case No. 1:19-CV-2615-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| MARTIN LINDSTEDT, | ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

## I.      Introduction

On June 12, 2020, Anthony Dominic Reo ("Plaintiff") moved for summary judgment against Martin Lindstedt ("Defendant"). (ECF No. 18). This matter was referred to Magistrate Judge Limbert on March 13, 2020, for pretrial supervision, including the issuance of reports and recommendations for disposition of case-dispositive motions. (ECF No. 14). It was then referred to me under General Order 2020-13 on July 6, 2020.

As detailed below, I recommend GRANTING summary judgment for Plaintiff as to liability on Count I and Count II. I recommend permitting Defendant to withdraw his admissions as they relate to damages; thus, I recommend DENYING summary judgment as to damages on Count I and Count II. I recommend DENYING summary judgment for Plaintiff on Count III. I recommend GRANTING Plaintiff's request for a limited permanent injunction. And due to lingering questions concerning damages, I also recommend that the Court hold additional proceedings to determine what (if any) damages Plaintiff is owed for Count I and Count II.

For his part, Defendant moved for cross-summary judgment against Plaintiff and sanctions against Plaintiff and Plaintiff's son (who serves as Plaintiff's counsel) on July 10, 2020. (ECF No. 19). As detailed below, I recommend DENYING summary judgment for Defendant on Claim I

1

and Claim II. I recommend GRANTING summary judgment, though, for Defendant on Claim III. I recommend DENYING summary judgment to Defendant on Claim IV. Finally, I recommend DENYING Defendant's meritless claim for sanctions.

## II.    Background

This case pits another member of the Reo family against Defendant, and it turns on the same procedural issue as the other cases before this District involving the Reos and Defendant: conclusively established admissions.[1] Plaintiff resides in Lake County, Ohio. Defendant is a pastor at the Church of Jesus Christ Christian/Aryan Nations of Missouri located in Granby, Missouri. (ECF No. 1). The parties readily admit that Plaintiff's son and Defendant have been at odds—and, at times, embroiled in litigation—for nearly a decade. (*See generally* ECF No. 35). In a recent action, Plaintiff's son filed a lawsuit in Lake County Court of Common Pleas against Defendant and his church for libel and false light for statements made by Defendant in 2015 and 2016. (ECF No. 1-1 at ¶ 7). Plaintiff's son won a $105,000.00 jury verdict against Defendant (and a $400.00 verdict against Defendant's church) in June 2019. (ECF No. 1-1 at ¶ 7).

This case, which was removed from the Lake County Court of Common Pleas on November 7, 2019, postdates those disputes. (ECF No. 1). Plaintiff alleges that Defendant published defamatory and false-light statements about Plaintiff on the forum www.whitenationalist.org after the 2019 Lake County trial. (ECF No. 1-1 at ¶¶ 7-9). Plaintiff characterized Defendant's publication as implying that "Plaintiff was having a homosexual incestuous relationship with Plaintiff's [son]." (ECF No. 1-1 at ¶ 9). Plaintiff asserts that Defendant "identified Plaintiff's son by name" and that his statement "provided sufficient information about

---

[1] *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2103-SO (N.D. Ohio) (filed Sept. 12, 2019); *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2589-CAB (N.D. Ohio) (filed Nov. 5, 2019); *Stefani Rossi Reo v. Lindstedt*, No. 19-CV-2786-CAB (N.D. Ohio) (filed Nov. 26, 2019).

Plaintiff such that Plaintiff could be reasonably identified from the context" as Plaintiff's son's father. (ECF No. 1-1 at ¶ 9).

Plaintiff served on Defendant (via First Class United States Mail and e-mail) written discovery on April 29, 2020. (ECF No. 18 at 8). Plaintiff's written discovery included 29 RFAs. (ECF No. 18 at 8-12). Plaintiff moved for summary judgment on June 12, 2020, because Defendant had not responded to Plaintiff's RFAs. (ECF No. 18).

## III.    Summary Judgment Standard of Review

Federal Rule of Civil Procedure 56(a) governs summary judgment motions. It provides that

> [t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting that there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, the court views the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determining

whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party must make a *prima facie* showing that it is entitled to summary judgment, and it bears the burden of production. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party must point out specific facts in the record that create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-moving party must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Zinn*, 885 F. Supp. 2d at 871 (quoting *Fulson*, 801 F. Supp. at 4). Moreover, the trial court does not have "a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citation omitted)).

**IV.    Analysis of Plaintiff's Motion for Summary Judgment**

    **A.    Requests for Admission Under Rule 36**

        **1.    Conclusively Established Admissions**

Under Rule 36(a)(3) of the Federal Rules of Civil Procedure, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection." Fed. R. Civ. P. 36(a)(3). Any "matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

Plaintiff served on Defendant via First Class United States Mail and e-mail written discovery on April 29, 2020. (ECF No. 18 at 8-12). Defendant does not dispute this fact. Plaintiff's written discovery included 29 RFAs. (ECF No. 18 at 8-12). Defendant had until May 29 to serve on Plaintiff a written answer or objection. Fed. R. Civ. P. 36(a)(3). He did not do so. (ECF No. 18 at 2). By operation of Rule 36, Defendant has conclusively admitted any "facts, the application of law to fact, or opinions about either" that are contained in Plaintiff's RFAs. Thus, the relevant admitted facts are:

1.    Plaintiff is an Ohio resident;

2.    Defendant purposefully caused Plaintiff to suffer damages in Ohio;

3.    On September 6, 2019, Defendant published on the internet to third parties a false statement alleging that Plaintiff committed homosexual incest with his own son;

4.    Plaintiff has never engaged in incest or homosexual conduct;

5.    Defendant does not possess any evidence, nor does Defendant know of any evidence, that would support the alleged truth of the statements at issue here;

6.    Defendant acted with actual malice; and

7.     Plaintiff is not a public figure or a limited-purpose public figure.[2]

**2.     Pure Legal Conclusions in RFAs 15, 16, 17, and 18**

Rule 36 does not, however, authorize requests for admissions of pure legal conclusions. *See United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) ("Requests for admission may relate to the application of law to fact. Such requests should not be confused with pure requests for opinions of law, which are not contemplated by the rule. Nor are requests seeking legal conclusions appropriate when proceeding under Rule 36." (quoting 7 MOORE'S FEDERAL PRACTICE § 36.10[8] at 36–26 (3d ed. 2008))). In *Petroff-Kline*, the plaintiff "sought to have the [plaintiff] admit such statements as 'Plaintiff has failed to state a claim upon which relief can be granted,' 'Plaintiff's claims are barred by the applicable statute of limitations and/or laches[,]' and 'Defendant does not owe money to Plaintiff.'" 557 F.3d at 294 (quoting the defendant's requests for admission). The Sixth Circuit analyzed whether these requests for admission impermissibly sought legal conclusions: "Plainly[,] the first of those requests does not fit the prescribed mold[] and the second is at least problematic in the same respect. Even the third, though it might perhaps be stretched into an effort to elicit a factual response, targets the ultimate legal issue in the case." *Id.* Accordingly, courts can disregard requests for admissions that seek pure legal conclusions. *Id.*

Four of Plaintiff's RFAs—numbers 15, 16, 17, and 18—seek pure legal conclusions or opinions on the ultimate legal issue at hand. For example, RFA 17 asks Defendant to "admit that Defendant is liable to Plaintiff for intentional infliction of emotional distress for the reasons

---

[2] RFA 13 asked, "Please admit that on September 17, 2018, Defendant published on the worldwide web a false and defamatory statement alleging that Plaintiff had conspired with an Ohio judge to corrupt jury proceedings occurring in June of 2019." (ECF No. 18 at 10). Although this RFA seeks factual admissions, it does not relate to the facts that support Plaintiff's Count I, Count II, or Count III theories of liability. Nor does Plaintiff explain in his motion for summary judgment how the RFA relates to those counts. Accordingly, the Court does not address RFA 13.

articulated in Paragraphs 35 through 39 of Plaintiff's Complaint." (ECF No. 18 at 6). RFAs 15, 16, and 18 are framed similarly. Even though these RFAs "might perhaps be stretched into an effort to elicit a factual response," this Court concludes that they "target[] the ultimate legal issue in the case," *i.e.*, whether Defendant has acted tortiously.[3] *Petroff-Kline*, 557 F.3d at 294. Thus, RFAs 15, 16, 17, and 18 are to be disregarded.

### 3.    Defendant's Request to Withdraw RFAs

Rule 36 provides a clear procedure for withdrawing admissions. Fed. R. Civ. P. 36(b) ("[Any] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."). Despite this, the Sixth Circuit has "held that a formal motion is not always required" to withdraw conclusively established admissions. *Petroff-Kline*, 557 F.3d at 293–94 (citing *Kerry Steel Inc. v. Paragon Indus.*, 106 F.3d 147, 153–54 (6th Cir.1997)). And in some instances, courts can impute withdrawal "from a party's actions, including the filing of a belated denial." *Petroff-Kline*, 557 F.3d at 293 (quotation omitted).

The Court concludes that Defendant has sought to withdraw RFAs 23, 24, 28, and 29. These admissions concern what (if any) damages Defendant might owe to Plaintiff. As an initial point, Defendant is proceeding *pro se*. Although *pro se* litigants must follow the same procedural rules as those who are represented by counsel, *pro se* litigants "are generally allowed more leeway" than their represented counterparts. *Strickland v. Spitalieri*, No. 1:19-CV-2899, 2020 WL

---

[3] This conclusion is strengthened by RFA 25, which asks Defendant to "admit to the truth of all allegations, factual and legal, contained within Plaintiff's Complaint." (ECF No. 18 at 12). Because RFA 25 conclusively establishes the facts of the complaint, Plaintiff seeks only an admission relating to liability in RFAs 15, 16, 17, and 18. Otherwise, RFA 25 would be redundant. Thus, the facts as alleged in Plaintiff's complaint are conclusively established. Separately, for the reasons listed above the line, RFA 25's attempt to conclusively establish any legal conclusion is improper.

1640315, at *2 (N.D. Ohio April 2, 2020) (noting, however, that "such leeway has its limits"). In his cross-motion for summary judgment, Defendant strenuously "denies harming" Plaintiff. (ECF No. 19 at 4). He also takes great issue with Plaintiff's alleged failure to provide a computation of damages (which Plaintiff is required to provide under Fed. R. Civ. P. 26(a)(1)(A)(iii)),[4] asserting that Plaintiff has not demonstrated to Defendant "how $500,000 in actual and punitive damages have been accrued." (ECF No. 19 at 4). Defendant has not moved to withdraw any admissions as Rule 36 proscribes; nevertheless, Defendant has manifested his intent to withdraw his admissions that concern damages.

The Court also concludes that Plaintiff would not be prejudiced if the Court permitted Defendant to withdraw RFAs 23, 24, 28, and 29. Rule 36(b) instructs that withdrawal or amendment is proper only if (1) "it would promote the presentation of the merits of the action" and (2) it would not cause prejudice to the party who requested the admissions "in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). "Prejudice under Rule 36(b) … 'relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission.'" *Kerry Steel*, 106 F.3d at 154 (quoting *AAA v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991)). On the action's merits, permitting Defendant to withdraw his admissions concerning damages would promote the presentation of the merits in this action because Defendant would be able to fairly contest them. After all, the

---

[4] Despite discussing this flaw in ECF No. 16 (which he filed two days before a CMC with Magistrate Judge Limbert), Defendant never initiated a discovery dispute under either Fed. R. Civ. P. 37(c) or Local R. 7.1. Instead, he merely reiterated the point in his July 2020 cross-motion for summary judgment. There, he implied that Plaintiff's procedural oversight absolved Defendant of his own obligation to follow the Rules. Not so: One's opponent's "performance [failures] under the Rules," or their lack of mutuality or reciprocity, "is not an excuse for failing to comply with the Rules" oneself. *State Auto Mut. Ins. Co. v. Burke*, No. 3:11–CV–536, 2013 WL 1386663, at *1 (E.D. Tenn. April 4, 2013).

"quintessential function of Requests for Admissions is to allow for the narrowing of issues, permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute." *Lakehead Pipe Line Co. v. American Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997). Defendant's statements in his response and cross-motion for summary judgment, in which he strongly disputes what (if any) damages he owes to Plaintiff, indicate that these facts remain in dispute. And on the prejudice to Plaintiff, he should still be able to prosecute his claim because Plaintiff, as the proponent here, controls the evidence concerning his injuries. Thus, Plaintiff suffers little prejudice if the Court permits Defendant to withdraw RFAs 23, 24, 28, and 29.[5] Ultimately, Plaintiff is not entitled to summary judgment on any damages allegations because there is a genuine issue of material fact as it relates to damages. Accordingly, further proceedings are required to establish those facts.[6]

Conversely, the overall substance and tone of his written submissions belies Defendant's blanket attempt to deny the remaining admissions. For instance, Defendant states that "[t]here is actually no discovery to be had other than what is publicly available to be seen on [Defendant's]

---

[5] Plaintiff relies only on the admitted RFAs to support his summary judgment motion. While it is his prerogative to do so, due to the extreme reputational and emotional injury that he alleges—and the high dollar amount that he claims would make him whole—surely Plaintiff can support his claims with substantive evidence, *i.e.*, evidence other than Defendant's procedural oversight.

[6] A colleague of this Court found in related case No. 19-CV-2103 that further proceedings were required to determine "the amount of money that is reasonable and fair for … injuries directly caused by the alleged defamation." Order (Sept. 28, 2020), at 13, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2103 (N.D. Ohio) (filed Sept. 12, 2019) (quoting *Yellow Book USA, Inc. v. Brandeberry*, No. 3:10-CV-025, 2011 WL 3240558, at *2 (S.D. Ohio July 28, 2011)). And another colleague recommended the same course of action in his two related cases. Report and Recommendation (Dec. 1, 2020), at 8-9, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2589-CAB (N.D. Ohio) (filed Nov. 5, 2019); Report and Recommendation (Dec. 1, 2020), at 8-9, in *Stefani Rossi Reo v. Lindstedt*, No. 19-CV-2786-CAB (N.D. Ohio) (filed Nov. 26, 2019).

… Church's web page…" (ECF No. 19 at 3-4). Moreover, Defendant largely substantiates Plaintiff's factual allegations:

> All [Defendant] … did was … assume that the mongrel sitting next to [Plaintiff's son] … while … [Plaintiff's son's] wife … jumped up and down at the Lake County Courthouse on the afternoon of 25 June 2019 [was] trying to get the attention of what [Defendant] … thought were two homosexual mongrels. It wasn't until [Plaintiff's son] … filed four more defamation cases … that [Defendant]…, who never referred to … [Plaintiff] by name but rather as [Plaintiff's son's] Alleged Spawner …, figured out that … [Plaintiff] was not one of [Plaintiff's son]'s mongrel homosexual lovers[, and] was regrettably not a homosexual.

(ECF No. 19 at 1-2). These statements demonstrate that Defendant admits the facts at issue; he merely disagrees with the characterization that they are tortious. He does not seek to withdraw them; thus, the Court rejects Defendant's disingenuous attempt to withdraw them at this stage.

*   *   *

In sum, and by operation of Rule 36(b), the Court concludes that Defendant has conclusively admitted to the facts and applications of law to fact in the RFAs. But Plaintiff's RFAs 15, 16, 17, and 18 are impermissible because they seek pure legal conclusions. Separately, Defendant has sought to withdraw his admissions to RFAs 23, 24, 28, and 29. Thus, the Court will not rely on RFAs 15, 16, 17, 18, 23, 24, 28, or 29 in determining whether Plaintiff is entitled to summary judgment.

### B.    Count I: Common Law Defamation

Plaintiff's Count I alleges *per se* defamation. (ECF No. 1-1 at 20-27). Under Ohio law, "defamation occurs when a publication contains a false statement made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or

profession." *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 389 (2012) (citation omitted).

To establish defamation under Ohio law, a plaintiff must show that:

> (1) … a false statement of fact was made, (2) … the statement was defamatory, (3) … the statement was published, (4) … the plaintiff suffered injury as a proximate result of the publication, and (5) … the defendant acted with the requisite degree of fault in publishing the statement.

*Anthony List v. Driehaus*, 779 F.3d 628, 632–33 (6th Cir. 2015) (quoting *Am. Chem. Soc.*, 133 Ohio St.3d at 389).

As discussed above, Defendant published on the internet to third parties a false statement that Plaintiff engaged in incest with his son. "A [statement] that accuses a person of committing a crime is [defamation] *per se*." *Gosden v. Louis*, 116 Ohio App.3d 195, 207 (1996) (citing *State v. Smily*, 37 Ohio St. 30, 33 (1881)). Incest is a Class E felony in Missouri (MO. REV. STAT. § 586.020 (2017)) and a second degree felony in Ohio (OHIO REV. CODE § 2907.03(A)(5)). Thus, Defendant's statement is *per se* defamatory. Defendant has thus injured Plaintiff because, at common law, "[p]roof of the defamation itself establishe[s] the existence of some damages." *Gosden*, 116 Ohio App.3d at 208 (citing *Gertz v. Welch*, 418 U.S. 323, 349 (1974)). Concerning Defendant's intent, Defendant has admitted that Plaintiff is a private individual, thus Plaintiff must show only that Defendant acted negligently. *Kassouf v. Cleveland Magazine City Magazines*, 142 Ohio App.3d 413, 421, (2001); *Sullins v. Raycom Media, Inc.*, 996 N.E. 2d 553, 561, n. 3 (Ohio App. 8th 2013). Defendant has admitted that he acted with actual malice; thus, Defendant acted with sufficient intent to injure Plaintiff. Accordingly, Plaintiff has made out a *prima facie* claim for common law defamation.

Because there is no genuine dispute of material fact concerning liability, Plaintiff is entitled to summary judgment on Claim I to that extent. But as discussed above, Plaintiff is not entitled to summary judgment as to damages because they remain at issue.

### C.     Count II: Invasion of Privacy—False Light

Plaintiff's Count II (which concerns the same facts as Count I) alleges invasion of privacy—false light. "Ohio law provides that one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if: (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879, 884 (S.D. Ohio 2014). The statement made must be false and the information must be "made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Welling v. Weinfeld*, 113 Ohio St. 3d 464, 471 (2007). False light claims and defamation claims often overlap. Indeed, the Ohio Supreme Court has stated that

> [i]n many cases to which the rule stated here applies, the publicity given to the plaintiff is defamatory, so that he would have an action for libel or slander… In such a case the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity.

*Id.* at 472 (quoting RESTATEMENT (SECOND) OF TORTS § 652E, Comment b (AM. LAW INST. 1977)).

The conclusively admitted facts discussed above also apply here. Concerning the first element, a statement is highly offensive when it is "such a major misrepresentation of [one's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Welling*, 113 Ohio St. 3d at 472. Under that definition, the

Court has no trouble concluding that alleged incest between Plaintiff and his son would be highly offensive to a reasonable person. Concerning the second element, Defendant admitted that he acted with malice towards Plaintiff. Finally, "[p]ublicity … means that … [the] communication … reaches, or is sure to reach, the public." *Id.* at 471 (quoting Restatement (Second) of Torts § 652D, Comment a (Am. Law Inst. 1977)). Defendant has admitted that he publicized the information to third parties via the internet, *i.e.*, to the public at large. (ECF No. 18 at 10). Plaintiff has thus established a *prima facie* case for invasion of privacy—false light.

Because there is no genuine dispute of material fact as to Defendant's liability, Plaintiff is entitled to summary judgment on Count II to that extent. But again, Plaintiff is not entitled to summary judgment as to damages because they remain at issue.[7]

### D.        Count III: Intentional Infliction of Emotional Distress

Count III, which again concerns Defendant's single publication, asserts a common law claim for intentional infliction of emotional distress. Under Ohio law, a plaintiff claiming intentional infliction of emotional distress must show that "(1) the defendant intended to cause emotional distress or knew or should have known that his conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App.3d 557, 562 (1997). Liability for intentional infliction of emotional distress "does not extend to mere

---

[7] In any case, Plaintiff is not entitled to a duplicate recovery for Count II because Defendant's statement here, which he admittedly publicized only once, is the same as the statement that gave rise to Plaintiff's defamation cause of action. *Welling*, 113 Ohio St. 3d at 472.

insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 375 (1983). In short, it is very difficult to establish a *prima facie* case for intentional infliction of emotional distress. *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.")

Plaintiff is not entitled to summary judgment on Count III. As an initial point, there are limited facts before the Court, as Plaintiff again relies only on Defendant's admissions, which are not well tailored to Count III. For instance, the Court finds a single, conclusory reference to emotional distress in Plaintiff's RFAs. (ECF No. 18). That RFA (number 17) asks for a pure legal conclusion on Defendant's liability; thus, it does is not evidence of Plaintiff's injury. Moreover, as per the complaint, "Plaintiff has suffered severe emotional distress in the form of vexation, irritation, anxiety, frustration, and hatred." (ECF No. 1-1 at ¶ 38). This conclusively established injury amounts only to "annoyances and trivialities." *Yeager* 6 Ohio St. 3d at 375. It does not rise to the level of severe emotional distress "of such a nature that no reasonable person could be expected to endure it." *Ekunsumi*, 120 Ohio App.3d at 562. And the complaint does not explain how Defendant's publishing a single defamatory and false light statement was so outrageous and extremely—beyond all bounds of decency—that it is "utterly intolerable in a civilized community." *Id.*

In sum, there is no genuine dispute of material fact concerning Defendant's conduct, and yet Plaintiff cannot make out a claim for intentional infliction of emotional distress. Accordingly, Plaintiff is not entitled to summary judgment on Count III.

14

### E.      Count IV: Permanent Injunction

Plaintiff seeks a permanent injunction in Count IV. Normally, the "rule in equity does not enjoin a libel or slander" because "the only remedy for defamation is an action for damages." *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206 (6th Cir. 1990) (quotation omitted). But *Lothschuetz* also holds that there is a narrow and limited exception to the no-injunction rule: It may be available when equitable relief is necessary to stop "frequent and continuing defamatory statements" and the plaintiff has no other recourse to prevent harm to her personal reputation or business relations. *Id.* at 1209 (Wellford, J., concurring in part and dissenting in part) (citing *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 390 (1973)). Similarly, Ohio law recognizes that injunctive relief may be proper when damage to one's reputation cannot be adequately compensated monetarily. *Sky v. Van Der. Westhuizen*, 136 N.E.3d 820, 836 (Ohio App. 5th 2019). Injunctions in these cases are limited to "the statements [that] have been found … to be false and libelous." *Lothschuetz*, 898 F.2d at 1209 (Welford, J., concurring in part and dissenting in part). This limitation avoids placing prior restraints on statements other than the defamatory statements (which are not protected by the First Amendment). *N. Am. Recycling v. Texamet Recycling, LLC*, No. 2:08–cv–579, 2012 WL 3283380, at *2 (S.D. Ohio Aug. 10, 2012) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72 (1942)). The Court has discretion under traditional principles of equity to grant or deny a permanent injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 394 (2006).

The Court concludes that Plaintiff is entitled to a limited permanent injunction. Plaintiff has demonstrated that Defendant's statement is defamatory and an invasion of his privacy; thus, he has suffered a cognizable injury. Although Plaintiff has alleged only one incident in which Defendant has defamed him or invaded his privacy, and Defendant asserted that he "wants nothing

15

to do with … Plaintiff," Defendant defamed Plaintiff on an open internet forum that the public can locate if it remains online. Although Plaintiff is entitled to other tort remedies, the harm to Plaintiff will persist unless Defendant is enjoined.

Moreover, Defendant readily admits to continually posting scandalous matter on his webpage about Plaintiff's son. (*See generally* ECF No. 19; *see also* ECF Nos. 22, 25, 27, 28, 29, and 32). And there is another matter in this court concerning Defendant having defamed Plaintiff's son's wife. *Stefani Rossi Reo v. Lindstedt*, No. 19-CV-2786-CAB (N.D. Ohio) (filed Nov. 26, 2019). On top of that, in his cross-motion for summary judgment, Defendant threatened to post additional scandalous matter about Plaintiff's son on his webpage:

> If [Plaintiff's son] really wants yet another thread on [Defendant's] Church's web page summarizing how [Plaintiff's son] is a delusional homosexual mongrel agent provocateur that thinks it is [a] heterosexual Aryan Christian Israelite working … to advance the First Amendment rights of those White Supremacists and Christian Identity figures (other than [Defendant or his church] …) then that could be arranged without even a telephone conference…"

(ECF No. 19 at 5-6). Defendant has not been deterred from such posts despite his years spent defending defamation claims. And an injunction will not cause any legal hardship to Defendant because he "has no legal right to defame Plaintiff…" Order (Sept. 28, 2020), at 18, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2103 (N.D. Ohio) (filed Sept. 12, 2019).

In *Lothschuetz*, the Sixth Circuit enjoined the defendant from publishing again "the statements which have been found in this … proceeding[] to be false" and defamatory. *Lothschuetz*, 898 F.2d at 1209 (Wellford, J., concurring in part and dissenting in part) (citing *Pittsburgh Press Co.*, 413 U.S. at 390). An injunction here would be similarly tailored. A colleague

of the Court ordered an injunction in 1:19-cv-2103.[8] Order (Sept. 28, 2020), at 16-18, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2103 (N.D. Ohio) (filed Sept. 12, 2019). He enjoined Defendant from issuing additional statements that were the same or substantially similar to the defamatory statements at issue in that case. *Id.* He also required Defendant to remove the defamatory statements. *Id.* So too here, as Defendant should be enjoined from making or publishing the defamatory statement regarding Plaintiff's sexual activity and those that are the same, or significantly similar in nature, to it. Defendant should also be required to remove, or cause to be removed, from all websites and publications the defamatory statement.

### F. Punitive Damages on Count I and Count II

Ohio law allows for punitive damages to "punish the [tortfeasor] and deter tortious conduct by others." *Digital & Analog Design Corp. v. N. Supply Co.*, 63 Ohio St.3d 657, 660 (1992). In general, punitive damages are appropriate only if the plaintiff shows that the defendant acted with "actual malice," which means "(1) that state of mind under which a person's conduct is characterized by hatred, ill will[,] or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Preston v. Murty*, 32 Ohio St.3d 334, 336 (1987).

Defendant has admitted, by operation of Rule 36(b), that he intended to injure Plaintiff. Thus, punitive damages can be awarded here for Count I and Count II. But as a colleague of this Court recently stated in the related case 1:19-cv-2103,

> just because Plaintiff is entitled to punitive damages does not mean
> [that] the court must award them. The Ohio Supreme Court has

---

[8] Another colleague of the court, though, did not recommend enjoining Defendant in his two cases. *See* Report and Recommendation (Dec. 1, 2020), at 12-14, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2589-CAB (N.D. Ohio) (filed Nov. 5, 2019); Report and Recommendation (Dec. 1, 2020), at 12-14, in *Stefani Rossi Reo v. Lindstedt*, No. 19-CV-2786-CAB (N.D. Ohio) (filed Nov. 26, 2019).

> explained that "an award of punitive damages is not automatic. Even when a plaintiff can establish entitlement to punitive damages, whether to impose punitive damages, and in what amount, is left to the trier of fact." *Whetstone v. Binner*, 57 N.E.3d 1111, 1115 (Ohio 2016). Additional proceedings are needed to determine whether a punitive damages award is appropriate in this case and, if so, in what amount.

Order (Sept. 28, 2020), at 16, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2103 (N.D. Ohio) (filed Sept. 12, 2019). So too here. Defendant has sought to withdraw his admissions relating to damages; thus, the Court needs additional information concerning damages before it can determine what (if any) punitive damages are appropriate.

## V. Defendant's Cross-Motion for Summary Judgment and Request for Sanctions

In his response to Plaintiff's summary judgment motion, Defendant purports to move for summary judgment of his own. He states:

> "[Defendant] requests that [Plaintiff's son's] frivolous Motion for Summary Judgment (Doc #[18]) be denied by this Court, that this Court instead issue a Summary Judgment on behalf of [Defendant] for the exact same amount frivolously demanded by [Plaintiff] against [Defendant] as a sanction, and that [Plaintiff's son] be disbarred as an officer of this Court for filing along with its wife and father these frivolous lawsuits against an old enemy[, Defendant]…"

(ECF No. 19 at 7). The Court liberally construes that passage as a request to grant summary judgment in Defendant's favor on all of Plaintiff's counts because they are "frivolous." (ECF No. 19 at 7).

Based on Defendant's admissions, Plaintiff is entitled to summary judgment on the liability portions of Claim I and Claim II and a permanent injunction. But the Court concludes that Defendant is entitled to summary judgment on Count III. As a matter of law, Defendant caused Plaintiff only mere "annoyances and trivialities." *Yeager*, 6 Ohio St. 3d at 375. And as a matter of law, Defendant's conduct was not "of such a nature that no reasonable person could be expected

to endure it." *Ekunsumi*, 120 Ohio App.3d at 562. Accordingly, Defendant is entitled to summary judgment on Count III.[9]

Separately, the Court construes Defendant's offhand statement to be a request for sanctions under Fed. R. Civ. P. 11(c). That rule provides that:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c). Defendant has no basis for asking this Court to sanction either Plaintiff or Plaintiff's son because Defendant has failed to adhere to any part of Rule 11's clear procedure. "Although pro se litigants are generally allowed more leeway than individuals represented by son, such leeway has its limits." *Strickland*, 2020 WL 1640315, at *2. Defendant has far exceeded those limits.

## VI.    Recommendations

For the reasons stated above, I recommend GRANTING summary judgment for Plaintiff as to liability on Count I and Count II. I recommend permitting Defendant to withdraw his admissions as they relate to damages; thus, I recommend DENYING summary judgment as to damages on Count I and Count II. Relatedly, I recommend the District Court holding additional proceedings to determine what (if any) damages Plaintiff is owed for these two claims. I recommend DENYING summary judgment for Plaintiff on Count III and, instead, GRANTING

---

[9] A colleague of the Court found the same in 1:19-cv-2103. Order (Sept. 28, 2020), at 14-15, in *Bryan Anthony Reo v. Lindstedt*, No. 19-CV-2103 (N.D. Ohio) (filed Sept. 12, 2019).

summary judgment for Defendant on that count. I recommend GRANTING a limited permanent injunction as discussed in Count IV. Finally, I recommend DEYING Defendant's motion for sanctions.

DATED: 3/3/2021

*Carmen Henderson*
Carmen E. Henderson
United States Magistrate Judge

_____

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).